MILLER *v.* FORT SMITH LIGHT & TRACTION COMPANY.

Opinion delivered October 21, 1918.

1. EVIDENCE—MOTION FOR CONTINUANCE.—It was not error to permit the testimony set out in a motion for continuance to be read where the parties agreed that it should be read in evidence.

2. STREET RAILROADS—RATE OF SPEED—INSTRUCTION.—It was not error to refuse an instruction that if a street car was "running at such a rate of speed that the employees could not stop in time to avoid a collision if an automobile should or might appear from the west, then operatives were guilty of negligence," as such instruction made the street car company an insurer of the safety of persons driving automobiles, whereas the company was only required to have its cars under such control that they could be stopped so as to prevent injury to persons using the street in the usual manner.

3. STREET RAILROADS—COLLISION WITH AUTOMOBILE—INSTRUCTIONS.—Where the court instructed the jury that the negligence of plaintiff's husband, driving the automobile in which she was riding, could not be imputed to her, and that if her injuries happened on account of the combined negligence of her husband and the defendant's motorman the plaintiff could recover, it was not error to charge further that plaintiff had no right to rely implicitly on the prudence of the driver, and that if the automobile was approaching defendant's tracks at a careless rate of speed, and plaintiff made no effort to have the speed diminished, and such action of the plaintiff contributed directly to the collision and her injuries, then she can not recover.

4. TRIAL—INSTRUCTION—SPECIFIC OBJECTION.—Where there was evidence which would justify an inference that plaintiff was injured

in a collision between her husband's automobile and a street car, and that she was sitting beside her husband, at the time, an instruction which assumed that she was sitting beside her husband when injured was not error, in the absence of specific objection.

5. TRIAL—INSTRUCTIONS—REPETITION.—It was not error to refuse to give an instruction which was covered by an instruction already given.

6. STREET RAILROADS—AIR BRAKES—ORDINANCE.—A city ordinance requiring street cars employed in interurban service to be equipped with air brakes had no application to a car not so employed, and in such case it was not error to refuse to allow such ordinance to be introduced in evidence.

7. STREET RAILROADS—DEFECTIVE BRAKES—INSTRUCTION.—Where the only defect in the brakes of defendant's street car alleged in plaintiff's complaint was the failure to use air brakes on an interurban car, and it was shown that the car was not an interurban one, no issue was raised as to the brakes on the car, and it was not error to charge that there was no evidence that the street car was defectively equipped with brakes.

Appeal from Sebastian Circuit Court, Fort Smith District; *Paul Little,* Judge; affirmed.

STATEMENT OF FACTS.

Ruby Miller sued the Ft. Smith Light & Traction Company to recover damages for personal injuries sustained by her in a collision between an automobile owned and operated by her husband and a street car of the defendant which she alleges occurred on account of the negligence of the defendant's servants in operating its street car. The defendant answered and denied negligence on its part and pleaded contributory negligence on the part of the plaintiff in bar of her recovery.

The accident happened in the city of Ft. Smith, Arkansas, on the 27th day of October, 1917. At that time, the defendant was a corporation operating a line of street railroad in the city of Ft. Smith, and also an interurban railroad from points within the city of Ft. Smith to a point in the city of Van Buren, Arkansas. At the time she received her injuries, the plaintiff was riding in an automobile driven by her husband. The street car with which the automobile came in collision turned out of Gar-

rison avenue and proceeded north along Eleventh street. Eleventh street was double tracked, and the car in question was being operated on the right-hand or east track. There was a car coming south on this street, which was being operated on the west track. The automobile in which the plaintiff was riding was being driven along H street in an easterly direction and collided with a street car about the intersection of H and Eleventh streets. The automobile was in low gear after the accident, and it was shown by skilled mechanics that it would be extremely difficult to change the automobile from high to low gear while it was being driven at a high rate of speed, and also that an automobile of the kind in which the plaintiff was riding could only be driven ten or twelve miles per hour in low gear. It was also shown that the street car coming south had stopped on the south side of H street and was receiving and discharging passengers at the time the accident occurred. An ordinance was introduced which showed that this was the wrong side of the cross street for this car to have stopped for the purpose of receiving and discharging passengers.

On the part of the street car company, it was shown that the street car was running at the rate of eight or ten miles per hour when the accident happened; that the motorman was ringing his gong for the crossing, and that the automobile was nearly a half block away on H Street when the motorman sounded the gong; that the automobile came east on H Street at an extremely fast speed; that the motorman began to apply his brakes and did all that he could to stop the car; that the automobile approached very rapidly and struck the street car about three feet back of the front fender and knocked it off of the track; that the automobile swerved to the left as if it was going to turn north, just before it struck the street car, and the right wheel of the automobile struck the street car and mashed in the front side of the automobile. The street car was a summer car, and was knocked entirely from the track and over against an electric light pole by the sidewalk. It was also shown that the south-

bound street car had already crossed H Street without stopping on either side of it, and had reached the middle of the block before the accident occurred. The car was then backed up to the south side of H Street for the purpose of assisting those who might have been injured in the collision, and that the passengers debarked from the car for that purpose and some of them again embarked on it. Other facts will be stated or referred to in the opinion.

There was a trial before a jury which resulted in a verdict for the defendant, and from the judgment rendered the plaintiff has appealed.

*J. F. O'Melia* and *Ben Cravens,* for appellant.

1. The court erred in refusing plaintiff's instructions Nos. 4 and 5. 126 Ark. 381.

2. Also in refusing Nos. 6 and 11. 123 Ark. 559.

3. Also in refusing No. 13.

4. It was error to permit the defendant to read in evidence the motion for a continuance. Kirby's Dig., § 6173. 67 Ark. 142.

5. The franchise ordinance was admissible as evidence to show negligence of defendant. 5 Ark. 595; 116 *Id.* 125.

6. It was error to prohibit plaintiff from offering in evidence Exhibit E. 111 Ark. 83.

7. It was error to give instruction No. 3 for defendant. 2 Enc. Pl. & Pr., pp. 58-9.

8. It was prejudicial error to give Nos. 8 and 9 for defendant. *Ib.*

9. It was error to give Nos. 12 and 14. 126 Ark. 377; 72 *Id.* 572.

10. Also in giving Nos. 17 and 18. There is no evidence that plaintiff was in the seat beside the driver. 70 Ark. 82; 105 U. S. 350; 11 Wall. 391; 15 *Id.* 401; 99 U. S. 676.

11. Also No. 19. As to the duty to look and listen. See 119 Ark. 301.

*Hill, Fitzhugh & Brizzolara,* for appellee.

1.   There is no error in giving and refusing instructions.  123 Ark. 559.  The instructions lay down the correct rule.  119 *Id.* 229; 8 L. R. A. 597; 72 Ark. 572; note to Am. Ann. Cas. 1912 A. 650; 128 Ind. 97; 28 Ind. App. 523; 116 Iowa 548; 62 Kan. 709; 66 *Id.* 735; 28 Ky. L. R. 1113; 80 Me. 430; 78 Miss. 334; 177 Mo. 456; 119 Mo. App. 358; 129 N. Y. 290; 66 Hun. 566; 30 Misc. 104; 10 Oh. C. C. 635; 20 *Id.* 297; 129 Pa. 514; 72 Tex. 643; 44 Fed. 574.

2.   There was evidence that plaintiff was on the seat with the driver.  No specific objections were made to instruction No. 17.  73 Ark. 595; 87 *Id.* 396; 1 Crawford's New Dig., 168-170.  The error, if any, was harmless.  179 Fed. 577; 73 Atl. 540.

3.   The fact that plaintiff was a guest did not relieve her from exercising ordinary care.  73 Atl. 540.  See also 114 Pa. 643; 129 *Id.* 524; 6 L. R. A. 143; 52 Atl. 543; Ann. Cas. 1913 B. 684-6.

4.   Number 19 correctly states the law.  It was plaintiff's duty to look and listen as well as the motorman's. 116 Ark. 137; 108 *Id.* 95.

5.   There was no error in admitting the testimony of F. F. Tregon.  It was distinctly agreed that the motion for continuance might be considered in both cases. The city ordinance was properly excluded, as it had no bearing on the case.  The appliances of the car were in proper order.

HART, J., (after stating the facts).  1.  It is first insisted that the court erred in permitting the defendant to read to the jury as evidence the motion for a continuance in the case of *T. H. Miller* v. *Ft. Smith Light & Traction Company*.  It appears from the record that T. H. Miller was the husband of Ruby Miller, and had also brought suit against the defendant for injuries received by him in the same accident.  His case was set for trial first, and the defendant filed a motion for a continuance, which the court announced would be granted unless the testimony referred to in the motion for

a continuance was allowed to be read in each of the cases. The same attorneys represented both the husband and wife. It was agreed that the testimony set out in the motion for a continuance should be read in each case. Hence there was no error in this respect.

2. It is next insisted that the court erred in refusing to give instruction No. 13 at the request of the plaintiff. The instruction is as follows: "If you believe from the evidence that the operatives of the street car were running said car along North Eleventh Street at an excessive and rapid and dangerous rate of speed, and at such a rate of speed that they could not stop the same in time to avoid a collision, if an automobile should or might appear from the west, and to the rear of the street, or on the west track, then the operatives would be guilty of negligence, and if the injury to Ruby Miller was caused thereby, as explained herein, then the jury should find for the plaintiff, Ruby Miller."

In the first place, it may be stated that this instruction was defective for the reason that it told the jury that if the street car was "running at such a rate of speed that the employees could not stop same in time to avoid a collision if an automobile should or might appear from the west, then operatives were guilty of negligence." This instruction would have made it the absolute duty of the motorman to have had his car under such control that he could stop it every time a vehicle came upon the track and would have made it the insurer of the safety of persons driving automobiles. This is not the law. The defendant was only required to have its cars under such control that they could be stopped so as to prevent injury to persons using the street in the ordinary and usual manner. Instructions on the relative duties of the street car company and those driving automobiles as to their use of the streets are fully covered in other instructions given by the court.

3. It is also claimed that the court erred in giving instruction No. 17 at the request of the defendant. Instruction No. 17 is as follows: "The court instructs the

jury that, although the plaintiff may not have been the driver of the automobile mentioned in the testimony, nevertheless plaintiff, situated as she was, had no right to rely implicitly upon the care and prudence of the driver on the seat beside her for her own safety, but it was her duty, if said driver was approaching said Eleventh Street, on which cars were passing at a careless rate of speed, to attempt to have him check his speed to a safe rate, and if the jury find that under the circumstances said automobile was approaching defendant's tracks at a careless rate of speed, and the plaintiff, situated as she was, made no effort to have said speed diminished, and that such action of the plaintiff contributed directly to said collision and her injuries, then she cannot recover, and your verdict must be for the defendant.''

In an instruction on behalf of the plaintiff the court told the jury that the negligence of the husband could not be imputed to his wife, and that if the injury happened on account of the combined negligence of the driver of the automobile and the motorman the plaintiff could recover. This is in accord with the rule in the case of the *Hot Springs Street Railroad Co.* v. *Hildreth,* 72 Ark. 572; see also, *Carter* v. *Brown,* 136 Ark. 23. The instruction on this point given by the court at the request of the plaintiff is as follows: ''10. If the plaintiff, Ruby Miller, was at the time of the collision a passenger in an automobile over which she had no control, and if she was not at the time directing or controlling its movements, then the negligence of the driver of the automobile, if there was any negligence on his part, cannot be imputed to the said Ruby Miller, and if under those circumstances the driver of the automobile was negligent, that negligence, if you should find it existed, cannot defeat a recovery by the plaintiff Ruby Miller, provided the negligence of the defendants, if any, combined with the negligence of the driver, if there was such negligence, caused the injury to the said plaintiff, Ruby Miller. (But if you find that the negligence of the driver of the automobile was the sole cause of the accident, you will find for the defendant).''

In a case note to 8 L. R. A. (N. S.) at p. 659, it is said that the great weight of authority is in favor of the proposition that the negligence of a husband is ordinarily not imputed to his wife in case she is injured by his and another's concurring negligence. While the negligence of the driver is thus not imputed to the guest, the circumstances may be such as to make it the duty of the guest to warn the driver of the impending danger, or otherwise try to control him. The passenger is thus held responsible for his own negligence, but not for the negligence of the driver. In other words, the rule is that one who, while riding in a private conveyance of another, is injured by the negligence of a third party may recover against the latter, notwithstanding that the negligence of the driver contributes to the injury, where the person injured is without fault and has no authority over the driver. *Colorado & Southern Ry. Co.* v. *Thomas* (Col.), 3 A. & E. Ann. Cas. 700, and note; *Shultz* v. *Old Colony Street Ry. Co.* (Mass.), 9 A. & E. Ann. Cas. 402 and note, and *Cotton* v. *Willmar & Sioux Falls Ry. Co.* (Minn.), 9 A. & E. Ann. Cas. 935. This rule of law is recognized by this court in *St. Louis & San Francisco Ry. Co.* v. *McFall,* 75 Ark. 30. When instructions Nos. 17 and 10 are read and considered in the light of the principles of law above announced, it will be seen that they are not in conflict, but each has its appropriate sphere in presenting the respective theories of the parties to the jury in this case.

It is next insisted that instruction No. 17 is erroneous because there is no evidence that the plaintiff was on the seat with her husband when the automobile collided with the street car. It is true that there is no direct testimony to that effect, but we think that it is fairly inferable from the whole record that she was riding on the same seat with her husband. The plaintiff herself said so inferentially. She said that she was riding with her husband; that he was running the automobile; that both she and her husband saw the street car approaching; that she saw her husband change the gear of the automobile.

Moreover if the counsel for the plaintiff thought the rights of the plaintiff would suffer by the form of the instruction, they should have made a specific objection to it. The instruction dealt with a phase of the law that was proper to be submitted to the jury under the circumstances, and this was without regard to the fact of whether the plaintiff was sitting on the front or back seat of the automobile, Having made no specific objection to the instruction at the trial, they are not now in an attitude to complain of its verbiage.

4. It is next insisted that the court erred in refusing to give instruction No. 4 upon the request of the plaintiff. The instruction is as follows: "It was the duty of defendant's motorman on the northbound street car, in approaching a street crossing at a blind corner, where his view is obstructed, if the evidence shows such blind corner, or his view was obstructed, to use due care in the operation of his car, which care required that he should have his car under control, that he should sound his gong or whistle and listen, as well as look, for automobiles that might be approaching the street upon which the car was traveling, for the purpose of crossing the same. If in this instance the evidence shows he failed to have the car under control or failed to see or hear the approaching automobile in time to stop or attempt to stop his car before colliding with same, if the evidence shows they did collide, and that this failure upon his part was due to inattention to his duties, as above set out, then such failure was negligence on his part."

The court did give instruction No. 7, which is as follows: "In the operation of street cars in a city, it is the duty of the operatives of the said cars to exercise due care. In the exercise of due care the operatives must be governed to some extent by the circumstances that surround them at the various places along their line. If defendant's employees and operatives had stopped one of defendant's street cars on the west track and south bound and on the south side of H Street (at the crossing) in such a way as to obstruct the view of the operatives of the north bound

street car which collided with the automobile from seeing west on H Street; then the operatives of the northbound street car (if you find these facts to be true) would be required to exercise a higher degree of care in proportion to the greater danger; the operatives should reduce the speed or take other precautions so as to have their car under such control as would enable them to avoid dangers and injuries to others.''

A comparison of these two instructions shows that the matters embraced in the refused instruction are completely covered by the instruction given, and instruction No. 7 presents the issues in favor of the plaintiff in a more concrete form than does instruction No. 4, which the court refused. The only blind corner claimed by the plaintiff was that the southbound street car stopped on the wrong side of H Street for the purpose of receiving and discharging passengers.

5. Finally it is insisted that the court erred in telling the jury that there was no evidence that the street car was defectively equipped with brakes, and also that it erred in refusing to allow the plaintiff to introduce in evidence the following ordinance:

"Sec. 853. *Cars, How Equipped.*—That all cars used or operated between October 15 and April 15 of each and every year during the life of this franchise shall be vestibuled, lighted and heated, and provided further, that all cars operated shall be equipped with both mechanical and ratchet lever hand brakes, and with head lights, all to be of the most approved pattern, and all interurban cars shall be equipped with air brakes of direct system and lever hand brakes, with braking power on all four wheels at the same time, fenders on both ends of cars to be approved by the council, all cars to be equipped with sand pipes, electric bells and all other modern appliances used on up-to-date street cars for the protection, convenience and comfort of passengers.''

These two assignments of error refer to the same matter and may be considered together. It appears from the record that the street car in question was not used in

interurban service, but was operated wholly within the incorporate limits of the city of Ft. Smith. The undisputed evidence shows that it had a ratchet lever hand brake and that it was in perfect operation. It is true the car was not equipped with air brakes, but, not being an interurban car, it was not required to be so equipped. It will be noted that under the provisions of the ordinance only interurban cars are required to be equipped with both air brakes of the direct system and ratchet lever hand brakes, with braking power on all four wheels at the same time. Cars operated wholly within the city limits were not required to be equipped with air brakes, but only with mechanical and ratchet lever hand brakes. It follows that the court did not err in giving the instruction or refusing to allow the ordinance to be introduced in evidence.

Other assignments of error on account of the action of the court in giving and refusing instructions are pressed upon us for a reversal of the judgment. We do not deem it necessary to set them out or to further notice them than to say that the court in giving and refusing instructions was governed by the principles of law announced in the following cases: *Ft. Smith Light & Traction Co.* v. *Hendrickson,* 126 Ark. 377; *Karnopp* v. *Ft. Smith Light & Traction Co.,* 119 Ark. 299, and *Ward* v. *Ft. Smith Light & Traction Co.,* 123 Ark. 559.

We find no prejudicial error in the record, and the judgment will be affirmed.

HART, J. (on rehearing). Counsel for the plaintiff claim that the court erred in affirming the ruling of the trial court in instructing the jury that there was no evidence that the street car was defectively equipped with brakes and in refusing to allow the plaintiff to introduce in evidence a section of its franchise ordinance as to how cars should be equipped. In her complaint the plaintiff alleges that the defendant neglected its duty in running summer street cars on its interurban line which were not vestibuled or equipped with air brakes of the direct system, mechanical and ratchet lever hand brakes. The

undisputed proof showed that the car in question was operated wholly within the corporate limits of the City of Ft. Smith and was not used in the interurban service. Hence the question of whether cars operated wholly within the city should be equipped with both mechanical and ratchet lever hand brakes was not an issue in the case, and the court properly held that the ordinance in question was not admissible. The section of the ordinance was copied in our original opinion, and reference only need be made to it here.

The court also properly instructed the jury that there was no evidence that the street car was defectively equipped with brakes. As above stated, the car was not required to have air brakes. The undisputed testimony shows that it was equipped with a ratchet lever hand brake, and that this brake was in perfect order. There was no proof to show that it was in anywise defective, and that was not an issue in the case. The case was tried solely on the ground that another street car had stopped at a place for the purpose of discharging and receiving passengers where it was not allowed under the ordinance to stop for that purpose, and by its wrongful action in this respect created a blind corner which prevented the motorman on the car in question from seeing the approach of the automobile in which the plaintiff was riding. The plaintiff in bringing her action evidently proceeded on the theory that the car in question was in the interurban service, and that there was negligence on the part of the defendant in not having it equipped with air brakes. When she found out that the car in question was not used in the interurban service, but was wholly operated within the corporate limits of the city, she should have amended her pleadings to allege negligence with respect to the kind of brakes used there if she intended to make that an issue in the case. Not having done so, she is not in an attitude to complain at the ruling of the court in this regard. The motion for rehearing will be denied.